**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

---

| | | |
|---|---|---|
| **TAMARACINA BIRDSE,** | ) | |
| | ) | |
| **Petitioner,** | ) | **No. 13-cv-02894-STA-tmp** |
| **v.** | ) | **No. 13-cv-02895-STA-tmp** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

---

**ORDER DENYING MOTIONS PURSUANT TO 28 U.S.C. § 2255**
**DENYING CERTIFICATE OF APPEALABILITY**
**CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH**
**AND**
**DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

---

Before the Court are separate Motions Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (the "§ 2255 Motion") filed by Petitioner Tamaracina Birdse ("Birdse"), Bureau of Prisons register number 24912-076, an inmate at FCI-Tallahassee in Tallahassee, Florida. The Motions were docketed as civil case numbers 13-cv-02894-STA-tmp and 13-cv-02895-STA-tmp, respectively. For the reasons stated below, Birdse's § 2255 Motions are **DENIED**.

## BACKGROUND

### I. Criminal Case Number 11-20327 and Criminal Information Number 12-20168

On December 20, 2011, a federal grand jury sitting in the Western District of Tennessee returned an indictment against Birdse, charging her with six counts of misuse of a Social Security number with the intent to deceive, to wit, falsely representing on an application for a Tennessee driver's license that a Social Security number was assigned to her, when the

Commissioner of Social Security had not in fact assigned the number to her, all in violation of 42 U.S.C. § 408(a)(7)(B). (*See* Indictment, *United States v. Tamaracina T. Birdse*, 2:11-cr-20327-STA (W.D. Tenn.), ECF No. 1.) Birdse entered a plea of not guilty as to all charges.

On June 26, 2012, the United States filed a separate criminal information against Birdse, alleging that she had stolen approximately $1,014,000 in funds administered by the Department of the Treasury by filing fraudulent tax returns and obtaining federal income tax refunds deposited into bank accounts controlled by Birdse and others in violation of 18 U.S.C. § 641. (*See* Information, *United States v. Tamaracina Birdse*, 2:12-cr-20168-STA (W.D. Tenn.), ECF No. 1.) Pursuant to an agreement with the United States, Birdse pleaded guilty to the information in criminal case no. 12-20168 and changed her plea to guilty as to one of the counts in criminal case no. 11-20327 at a change of plea hearing on June 26, 2012. As part of the agreement, the United States agreed to dismiss the remaining counts of misuse of a Social Security number in criminal case no. 11-20327 at sentencing.

The United States Probation Officer prepared a presentence report ("PSR") describing the factual basis for the charges against Birdse. Concerning the charge of misusing a Social Security number, the PSR stated that the United States Secret Service investigated Birdse as part of a broader investigation of tax fraud in Memphis, Tennessee. The investigation showed that Birdse had received Social Security survivor benefits following her mother's death in January 2000. Birdse's sister, Lakisha Danielle Birse,[1] did not receive the survivor benefits to which she was entitled because she had been listed as a missing person since December 15, 1999. On October 23, 2007, Birdse applied for a Social Security card using her sister's Social Security number.

---

[1] The PSR stated that Birdse's father's last name was was actually "Birse" and that Birdse's birth documents spelled her last name incorrectly as "Birdse." Birdse's sister Lakisha had the correct family name.

Posing as her missing sister, Birdse claimed that in the years since she had been missing, her boyfriend had held her captive at his home. Birdse also used her sister's Social Security number to apply for the survivor benefits to which her sister was entitled and received $16,726.00 in survivor benefits.

On November 5, 2007, Birdse used her missing sister's Social Security number to apply for a Tennessee driver's license. The photo on the driver's license pictured Birdse. The same day Birdse opened an account at First Tennessee Bank in her sister's name. The Social Security Administration directly deposited the full amount of the survivor benefits into the account on December 3, 2007. Birdse subsequently applied for Tennessee driver's licenses in her sister's name on four other occasions between February 2008 and December 2009.

With respect to the charge of stealing money from the United States, the PSR reported that the Secret Service received information about Birdse filing fraudulent tax returns. Following an extensive investigation, Birdse met with case agents on February 19, 2012, and gave a proffer statement in which she detailed how she used other individuals to open bank accounts and then had refunds on fraudulent individual federal income tax returns deposited into the accounts. Other witnesses interviewed during the investigation stated that Birdse would pay students and others to steal the personal identifying information of high school students and then use the personal identifying information of the high school students to file the fraudulent returns. The investigation showed that Birdse caused refunds to be deposited into five different bank accounts: $146,185.62 into a First Tennessee account, $175,222.00 into a Wachovia account; $163,630.44 into a separate Wachovia account; $303,412.00 into another First Tennessee account; and $226,222.00 into a third First Tennessee account.

The PSR calculated the total loss to the federal government from Birdse's crimes as $1,058,398.06. As part of the plea agreement, the parties agreed to recommend that the Court

sentence Birdse at the high end of the advisory guideline range as found by the Court at sentencing on the charge of misuse of a Social Security number. The parties further agreed to recommend that Birdse serve her sentences as to the two charges consecutively. Birdse stipulated in the plea agreement that the loss amount for her tax fraud offense was more than $1,000,000 and less than $2,500,000 and that the offense involved more than 250 victims. Birdse agreed to pay restitution and waived her right to appeal.

On November 14, 2012, the undersigned sentenced Birdse to a term of imprisonment of thirty-six (36) months as to the charge of misuse of a Social Security number (Count 6 in criminal case no. 11-20327) and 110 months as to the charge of stealing money from the United States (Count 1 in criminal case no. 12-20168), both sentences to be served concurrently, three years supervised release, and a special assessment of $200. (*See* Judgment, ECF No. 15.) The Court subsequently entered an amended judgment on February 19, 2013, to include an order of restitution in the amount of $17,726.00.

**B.**     **Civil Cases 13-2894 and 13-2895**

On November 15, 2013, Birdse filed identical *pro se* § 2255 Motions, which the Clerk of Court docketed as civil case nos. 13-2894 and 13-2895. Birdse's § 2255 Motions allege several claims of ineffective assistance of counsel:

1.     Counsel's failure to object to grouped charges at sentencing;

2.     Counsel's failure to seek dismissal of an invalid indictment;

3.     Counsel's failure to object to the calculation of Birdse's criminal history points;

4.     Counsel's failure to object to the loss amount at sentencing; and

5. Counsel's failure to object at sentencing to enhancements for sophisticated means, unlawful use of means of identification, and organizer or leader role.

(*See* § 2255 Motion, ECF No. 1.) Birdse's traverse to the government's response conceded her claims as to the grouping of her charges and validity of the indictment. As such, the Court focuses its analysis only on the remaining contested claims in her § 2255 Motions.

First, Birdse argues that counsel failed to investigate her criminal history and consequently failed to object to the Court's calculation of Birdse's criminal history points. Specifically, Birdse claims that she was assessed one point for a shoplifting offense committed on August 6, 2007. The PSR noted Birdse's conviction on the charge and a fine of $647.50 imposed on August 9, 2007. According to Birdse, however, she was never convicted of the offense. On August 9, 2007, the court in Mississippi continued her case and assessed the fine for her failure to appear at an August 30, 2007 hearing. Birdse explains that she failed to appear because she had been taken into custody for the violation of her probation on another matter. Birdse argues that the shoplifting offense should not have been included in the computation of her criminal history points and that had counsel properly investigated the charge, he would have raised an objection at sentencing.

In her second ground for relief, Birdse asserts that counsel was ineffective by failing to object to the calculation of the loss amount at sentencing. Birdse argues that the PSR calculated the loss resulting from Birdse's offenses as $1,014,000, an amount between $1,000,000 and $2,500,000 for purposes of U.S.S.G. §2B1.1(b)(2)(i). Birdse contends that $89,000 was returned to the IRS from her Wells Fargo (Wachovia) account in September 2010, approximately one year before the offense was discovered. If counsel had investigated this loss, he would have

discovered the credit and the total loss amount of Birdse's offenses would have been shown to be less than $1,000,000. As a result, her offense level would have been two points lower.

In her third and final ground for relief, Birdse claims that counsel was ineffective for his failure to object at sentencing to enhancements for sophisticated means, unlawful use of means of identification, and organizer or leader role. Birdse argues that the Court's factfinding at sentencing and application of these enhancements violated the Supreme Court's decisions in *Apprendi v. New Jersey* and *Alleyne v. United States*. Birdse contends that the application of these enhancements was unconstitutional because the government failed to disclose its intention to seek the enhancements when the parties entered into a plea agreement. Based on the ineffective assistance of her counsel at sentencing, Birdse argues that the judgment against her is unconstitutional.

The United States has responded in opposition. The government has produced an affidavit from Birdse's attorney at her sentencing, Michael Floyd. With respect to the first ground for relief, the government argues that Floyd discussed the PSR with Birdse prior to the sentencing hearing. Floyd specifically discussed Birdse's criminal history with her. Birdse did not inform Floyd of any issues related to the 2006 shoplifting charge. Had she done so, Floyd would have raised an objection to the PSR and its calculation of Birdse criminal history points. Birdse cannot show then that Floyd was ineffective for not raising the issue with the Court. Birdse's second ground for relief based on the loss amount is likewise without merit. Birdse agreed to the loss amount as part of her plea agreement with the government. Counsel cannot be ineffective for failure to challenge a fact to which Birdse had already stipulated in her plea agreement. Finally, the government argues that Birdse's third ground for relief is unsupported and frivolous. Counsel did object to an enhancement for sophisticated means at sentencing. Any

objection derived from *Apprendi* would have been baseless.  The Court's application of the enhancements did not result in a sentence in excess of the statutory maximum.  Therefore, the Court should dismiss Birdse's petition.

Birdse has replied to the government's arguments in a traverse.  Birdse argues that while counsel discussed the calculation of her criminal history points, counsel did not ask her about the actual convictions.  Birdse contends that his failure to do so amounts to ineffective assistance.  With respect to the loss amount, Birdse concedes that she stipulated to the amount in her plea agreement.  Birdse asserts that she "signed the plea agreement believing that her attorney would have known that the plain text of the guidelines and its commentary require sentencing judges to give defendants credit in a loss calculation for 'money returned.'"  Birdse continues to maintain that she returned $89,000 to the IRS in September 2010, one year before the government learned Birdse's offense against the United States.  Concerning her third and final ground for relief, Birdse argues that the enhancements did result in a sentence that was greater than the statutory maximum.  Birdse's theory appears to be that her guidelines range would have been lower had the Court correctly calculated her criminal history points and that her sentence exceeded this lower guidelines range.  Birdse nevertheless concedes that her "sentence was not beyond that statutory maximum penalty for the offense."  Birdse goes on to cite a decision of the Supreme Court of Alabama to support her contention that an *Apprendi* error is not harmless just because it does not result in a sentence below the statutory maximum.

## **STANDARD OF REVIEW**

Birdse seeks habeas relief in this case pursuant to 28 U.S.C. § 2255(a).  The statute reads as follows:

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid."[2]  A § 2255 motion is not a substitute for a direct appeal.[3]  "[N]onconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings."[4] "Defendants must assert their claims in the ordinary course of trial and direct appeal."[5] The rule, however, is not absolute:

> If claims have been forfeited by virtue of ineffective assistance of counsel, then relief under § 2255 would be available subject to the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In those rare instances where the defaulted claim is of an error not ordinarily cognizable or constitutional error, but the error is committed in a context that is so positively outrageous as to indicate a "complete miscarriage of justice," it seems to us that what is really being asserted is a violation of due process.[6]

Procedural default bars even constitutional claims that a defendant could have raised on direct appeal, but did not,  unless the defendant demonstrates cause and prejudice sufficient to excuse

---

[2] *McPhearson v. United States*, 675 F.3d 553, 558-59 (6th Cir. 2012) (internal quotation marks omitted).

[3] *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013); *see also Sunal v. Lange*, 332 U.S. 174, 178 (1947).

[4] *Stone v. Powell*, 428 U.S. 465, 477 n.10 (1976).

[5] *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996).

[6] *Id.*

his failure to raise the issues previously.[7]   Alternatively, a defendant may obtain review of a procedurally defaulted claim by demonstrating his "actual innocence."[8]

Dismissal of a § 2255 motion is mandatory if the motion, exhibits, and the record of prior proceedings show that the petitioner is not entitled to relief.[9]   If the habeas court does not dismiss the motion, the court must order the United States to file its "answer, motion, or other response within a fixed time, or take other action the judge may order."[10]   The petitioner is then entitled to reply to the government's response.[11] The habeas court may also direct the parties to provide additional information relating to the motion.[12]

"Habeas petitions must meet heightened pleading requirements . . . ."[13]   "Generally, courts have held that conclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim under § 2255."[14]   An evidentiary hearing is required "to

---

[7] *See El-Nobani v. United States*, 287 F.3d 417, 420 (6th Cir. 2002) (withdrawal of guilty plea); *Peveler v. United States*, 269 F.3dd 693, 698-99 (6th Cir. 2001) (new Supreme Court decision issued during pendency of direct appeal); *Phillip v. United States*, 229 F.3d 550, 552 (6th Cir. 2000) (trial errors).

[8] *Bousley v. United States*, 523 U.S. 614, 662 (1998); *Vanwinkle v. United States*, 645 F.3d 365, 369-70 (6th Cir. 2011).

[9] Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts ("Section 2255 Rules").

[10] *Id.*

[11] Rule 5(d), Section 2255 Rules.

[12] Rule 7, Section 2255 Rules.

[13] *See McFarland v. Scott*, 512 U.S. 849, 856 (1994) (construing requirements of 28 U.S.C § 2254 Rule 2(c) identical to the requirements of 28 U.S.C. § 2255 Rule 2(c)).

[14] *Jefferson v. United States*, 730 F.3d 537, 547 (6th Cir. 2013) (collecting cases).

determine the truth of petitioner's claims" only where a factual dispute exists.[15]  No hearing is required "when a petitioner's claims cannot be accepted as true because they are contradicted by the record, inherently incredible, or are conclusions rather than statements of fact."[16]  Where, as here, the judge considering the § 2255 motion also presided over the underlying proceedings, the judge may rely on his recollections of those proceedings.[17]  The petitioner has the burden of proving that he is entitled to relief by a preponderance of the evidence.[18]

## ANALYSIS

### I. Ineffective Assistance of Counsel

Birdse's § 2255 Motion argues ineffective assistance of counsel based on counsel's failure to raise objections at the sentencing phase.  A claim that ineffective assistance of counsel has deprived a defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984).  To demonstrate deficient performance by counsel, a § 2255 petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness."[19]  "A court considering a claim of ineffective assistance must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance.  The challenger's burden is to show that counsel made errors

---

[15] *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)).

[16] *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013) (citations and internal quotation marks and brackets omitted).

[17] *Id.*

[18] *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

[19] *Strickland v. Washington*, 466 U.S. 668, 688 (1984).

so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."[20]

To demonstrate prejudice, the petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[21] "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[22] The petitioner must do more than prove that counsel's errors had "some conceivable effect on the outcome of the proceeding;" the "errors must be so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."[23]   A claim of ineffective assistance of counsel is a mixed question of fact and law.[24]

"Surmounting *Strickland*'s high bar is never an easy task."[25]

---

[20] *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (internal quotation marks and citations omitted).

[21] *Strickland*, 466 U.S. at 694.  Additionally, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." *Id.* at 697.  If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient.  *Id.*

[22] *Id.*

[23] *Richter*, 562 U.S. at 104 (internal quotation marks and citations omitted); *see also id.* at 111-12 ("In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . .  The likelihood of a different result must be substantial, not just conceivable.") (citations omitted); *Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (per curiam) ("But *Strickland* does not require the State to rule out [a more favorable outcome] to prevail.  Rather, *Strickland* places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different.").

[24] *McPhearson*, 675 F.3d at 559.

[25] *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S. Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.*, at 689, 104 S. Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S. Ct. 2052.[26]

## A. Calculation of Birdse's Criminal History Points

With respect to counsel's failure to investigate Birdse's prior shoplifting offense, Birdse has not overcome the "strong presumption that counsel's representation was within the wide range of reasonable professional assistance."[27] A district court at sentencing may "accept as true all factual allegations in a presentence report to which the defendant does not object."[28] "By failing to object to the presentence report, [a defendant] accept[s] all of the factual allegations contained in it."[29] This includes the existence of prior convictions.[30] Counsel's failure "to object

---

[26] *Richter*, 562 U.S. at 105.

[27] *Id.* at 104.

[28] *United States v. Carter,* 355 F.3d 920, 925 (6th Cir. 2004).

[29] *United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc) (citing *United States v. Adkins*, 429 F.3d 631, 632-33 (6th Cir. 2005)).

[30] *United States v. Hockenberry*, 730 F.3d 645, 666 (6th Cir. 2013) (collecting cases for the proposition that "a district court may rely on unchallenged PSR findings to establish the existence of prior convictions").

to an error in the PSR []—if left uncorrected by the district court—can be grounds for finding deficient performance."[31] "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."[32] The Sixth Amendment does not require "defense lawyers to scour the globe on the off chance something will turn up"[33] so long as counsel's choice not to pursue a specific line of investigation is reasonable.[34]

Applying these principles to the facts of this case, the Court holds that counsel's decision not to investigate Birdse's prior shoplifting conviction was reasonable. The Court expresses serious doubt that Birdse can satisfy *Strickland*'s prejudice prong and show how the use of her 2006 shoplifting charge caused Birdse to suffer any prejudice. Birdse claims that her 2006 shoplifting charge never resulted in a conviction and therefore should not have resulted in one point being assessed on her criminal history score. The record belies Birdse's claim and shows that even if counsel had challenged the PSR's factual assertions about the disposition of the shoplifting charge, Birdse still would have received one point on her criminal history score. According to the exhibits attached to Birdse's Amended Motion to Vacate (ECF No. 3), the

---

[31] *Howard v. United States*, 743 F.3d 459, 464 (6th Cir. 2014) (citations omitted).

[32] *Strickland*, 466 U.S. at 691 (discussing the duty to investigate mitigation evidence in a capital case).

[33] *Rompilla v. Beard*, 545 U.S. 374, 383 (2005) (analyzing ineffective assistance claim in a capital case) (citations omitted).

[34] *Wiggins v. Smith*, 539 U.S. 510, 521-522 (2003).

Southaven, Mississippi Municipal Court entered an order on August 9, 2006 (ECF No. 3-1, Page ID 38), continuing Birdse's court date and setting her case for a report later in August 2006. The order granted Birdse this relief based on her "desir[e] to plead guilty to the charge or charges pending in this court" and pay the fine in court at a hearing on August 30, 2006. Birdse now explains that she was taken into custody for violating her probation on another charge in August 2006 and never made her August 30, 2006 court date in Mississippi. The Southaven Municipal Court found her in contempt for her failure to appear and imposed a monetary fine as a sanction for her contempt. Other than an unverified letter from the Southaven Police Department referring to a warrant for contempt, Birdse has not cited any evidence to support her claims about the disposition of her shoplifting case.

U.S.S.G. § 4A1.1 governs the determination of a defendant's criminal history category based on the assessment of points for prior convictions. Section 4A1.1(c) provides for one point for specified "prior sentences." Section 4A1.2(a)(1) defines a "prior sentence" as "any sentence previously imposed upon adjudication of guilty, whether by guilty plea, trial, or plea of *nolo contendere*, for conduct not part of the instant offense." Section 4A1.2(a)(4) goes on to state that "[w]here a defendant has been convicted of an offense, but not yet sentenced, such conviction shall be counted as if it constituted a prior sentence under §4A1.1(c) if a sentence resulting from that conviction otherwise would be countable." With reference to this specific paragraph, the phrase "convicted of an offense" means "that the guilt of the defendant has been established, whether by guilty plea, trial, or plea of nolo contendere." In other words, a defendant's guilty plea can suffice to prove that the defendant was "convicted of an offense" even if a court had not yet sentenced the defendant and the guilty plea can result in the addition of one point on the defendant's criminal history score pursuant to U.S.S.G. § 4A1.2(a)(4).

In this case the record arguably shows that Birdse admitted her guilt to the shoplifting charge before the Mississippi court. The Southaven Municipal Court order states that Birdse had expressed her intention to enter a guilty plea and appear on a date certain and pay the fine for the offense, though the order did not assess the fine at that time. According to Birdse, the court never assessed a fine against her for the shoplifting charge, and Birdse never paid such a fine. Birdse asserts that the Mississippi court subsequently found her to be in contempt and assessed the fine against her for her contempt of court, not the shoplifting charge. The record is not clear whether Birdse formally entered a guilty plea. Even so, Birdse does not deny that she was charged with shoplifting and that she had admitted her guilt to the offense before the Mississippi court. These facts are arguably enough to establish that Birdse was "convicted of an offense" and never sentenced. As such, even if Birdse had challenged the PSR's assessment of one criminal history point for the shoplifting offense, she still would have received the point simply for admitting her guilt, regardless of "any sentence previously imposed." In sum, Birdse would likely not be able to prove that counsel's failure to object to the PSR caused her any prejudice under *Strickland*'s second prong.

The Court need not fully resolve the issue of prejudice to decide Birdse's § 2255 Motions. Birdse has not shown that counsel's representation at sentencing fell below an objective standard of reasonableness. Here counsel's options to attack the shoplifting offense at sentencing were limited. As a general matter, a "federal defendant has no right to collaterally attack at sentencing a prior conviction," except for complete lack of counsel.[35] "These principles bear extra weight in cases in which the prior convictions . . . are based on guilty pleas, because

when a guilty plea is at issue, 'the concern with finality served by the limitation on collateral attack has special force.'"[36]  Birdse's argument here is not that counsel should have mounted a collateral attack on the shoplifting conviction at sentencing but that there was never a conviction to begin with and that a reasonable investigation would have revealed this fact.  Even accepting as true Birdse's claim that the details about her shoplifting offense in the PSR were not accurate and that she could have raised an objection to the PSR at sentencing, Floyd's decision not to investigate the offense was reasonable under the circumstances.

It is undisputed that Birdse never raised any question about the PSR's description of her 2006 shoplifting charge.  Floyd's affidavit states that he reviewed the PSR with Birdse before sentencing.  Floyd asserts that if Birdse had raised an issue about the shoplifting charge, he would have made an objection at sentencing.  For her part Birdse admits that counsel met with her to discuss the PSR before sentencing.  Birdse further admits that counsel discussed the calculation of her criminal history points with her.  But Birdse claims that counsel failed to discuss the facts and circumstances of her prior offenses with her and did not inquire specifically about her shoplifting charge.  At no time, however, did Birdse inform counsel that the PSR and its brief recitation of facts about her 2006 shoplifting charge was incomplete or inaccurate.  In this case a reasonable defendant in Birdse's position would have brought a factual inaccuracy about the shoplifting offense to the attention of her attorney and thus triggered counsel's duty to investigate.

---

[35] *Custis v. United States*, 511 U.S. 485, 497 (1994); *see also Daniels v. United States,* 532 U.S. 374, 379 (2001) (holding that a petition cannot attack prior convictions in a § 2255 proceeding).

[36] *Id.* (quoting *United States v. Timmreck*, 441 U.S. 780, 784 (1979)).

A typical PSR can contain scores of facts related to a defendant's offense conduct, prior criminal activity, family characteristics, physical and mental health, education and vocational skills, employment history, and financial resources. Facts related to criminal history have particular significance because they determine the defendant's criminal history score under the sentencing guidelines. In many cases, the defendant's criminal history involves several prior convictions, dating back years (and sometimes decades), all with their own factual background and procedural history and often before other courts in other jurisdictions. In any given case, the defendant, and not counsel, is clearly in a better position to identify a factual error in the PSR concerning the defendant's criminal past. It follows that counsel's duty to investigate is strongest where the defendant raises a question about the PSR's recitation of facts. By the same token, the Sixth Amendment only requires counsel to conduct a reasonable investigation under the circumstances. It does not require counsel to conduct an independent investigation into each and every material fact contained in a PSR, particularly where the defendant has reason to know that a material fact in the PSR is inaccurate but fails to bring the inaccuracy to counsel's attention. Otherwise, a defendant could sandbag trial counsel and thereby manufacture issues for a subsequent collateral attack. Under all of the circumstances, the Court concludes that Floyd's failure to investigate the shoplifting charge did not amount to constitutionally deficient assistance of counsel. Therefore, Birdse's § 2255 Motions are **DENIED** as to this claim.

**B. Calculation of Loss Amount**

Next, Birdse argues that counsel was ineffective by failing to object to the loss amount calculation in the PSR and at sentencing. According to Birdse, $89,000 was returned to the IRS one year before the government learned of her offense. Birdse has introduced no evidence to support her contention other than her assertion in her unsworn memorandum. Birdse's claim,

17

however, fails because the loss amount was a stipulation contained in her plea agreement with the government. Paragraph 4(b) of the plea agreement stated that the "parties mutually agree as follows: that the loss amount for Count 1 of the Information is more than $1,000,000 and less than $2,500,000 and that the offense involved more than 250 victims."[37] Counsel cannot be ineffective for failing to challenge a fact to which his client has voluntarily entered into a stipulation. Birdse argues in her traverse that the attorney who advised her during the plea bargaining phase should have known that she should receive credit for the amounts returned to the IRS. Birdse has not shown though that she informed her other attorney about the amounts returned.

Perhaps more importantly, Birse has not actually shown that she returned stolen money to the United States. Under U.S.S.G. § 2B1.1, a defendant convicted of theft or stealing property receives 16 points on her offense level if the the crime involved more than $1,000,000 but less than $2,500,000. Application note 3(E)(i) to § 2B1.1 addresses credits against loss and states that "[l]oss shall be reduced by the following: [t]he money returned . . . by the defendant or other persons acting jointly with the defendant, to the victim before the offense was detected." Birdse has offered no proof to show that she or someone acting jointly with her returned money to the United States. Birdse simply states that $89,000 was "returned" from a bank account. The Court has no other information about the circumstances of the return, including who was responsible for returning money to the IRS or why the money was returned. Birdse has not shown then that counsel was ineffective for failing to advise her about the credit or that she suffered any prejudice. Therefore, Birdse's § 2255 Motions must be **DENIED** as to this claim.

---

[37] Plea Agreement 3 (ECF No. 3, No. 12-20168-STA).

## C. Sentencing Enhancements and Improper Judicial Fact-Finding

Birdse's final claim is that counsel failed to object to the Court's improper fact-finding at sentencing and that the result of the error was the application of an improper sentencing enhancement. Birdse couches this argument as an ineffective assistance of counsel claim, though it is arguably a claim more properly raised in a direct appeal. Even so, counsel was not ineffective for raising such an argument at sentencing because Birdse's theory is frivolous. Birdse's sentence did "not run afoul of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), since it did not exceed the statutory maximum that would have applied even without the enhancing factor."[38] The Court sentenced Birdse to 110 months' incarceration on the charge of misappropriation of money belonging to the United States. Title 18 U.S.C. § 641 makes it a crime to "embezzle[], steal[], purloin[], or knowingly convert[] to his use or the use of another" any money of the United States and sets a statutory maximum penalty of 10 years' imprisonment. Because Birdse's sentence did not exceed this statutory maximum, any argument based on *Apprendi* at sentencing would have been objectively unreasonable. Therefore, Birdse's § 2255 Motions are **DENIED** as to this claim.

## II. Appeal Issues

Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right."[39] No § 2255

---

[38] *United States v. Honeycutt*, 816 F.3d 362, 376 (6th Cir. 2016) (quoting *United States v. Osborne*, 673 F.3d 508, 512 (6th Cir. 2012)).

[39] 28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b).

movant may appeal without this certificate. The COA must indicate the specific issue(s) that satisfy the required showing.[40] A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."[41] A COA does not require a showing that the appeal will succeed.[42] Courts should not issue a COA as a matter of course.[43]

In this case, for the reasons previously stated, the issues raised by Birdse in support of his § 2255 Motion lack substantive merit and, therefore, he cannot present a question of some substance about which reasonable jurists could differ. Therefore, the Court **DENIES** a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. §§ 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions.[44] Rather, to appeal *in forma pauperis* in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a).[45] Rule 24(a) provides that a party seeking pauper status on appeal must first

---

[40] 28 U.S.C. §§ 2253(c)(2) & (3).

[41] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation marks and citation omitted); *see also Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same).

[42] *Miller-El*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814-15 (6th Cir. 2011).

[43] *See Bradley v. Birkett*, 156 F. App'x 771, 773 (6th Cir. 2005).

[44] *See Kincade v. Sparkman*, 117 F.3d 949, 951 (6th Cir. 1997).

[45] *Id.* at 952.

file a motion in the district court, along with a supporting affidavit.[46]  However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court.[47]

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith.  It is therefore **CERTIFIED**, pursuant to Federal Rule of Appellate Procedure 24(a), that any appeal in this matter would not be taken in good faith.  Leave to appeal *in forma pauperis* is **DENIED**.[48]

### CONCLUSION

Birdse has not shown that counsel was ineffective or that she suffered any prejudice as a result of any ineffective assistance.  The motion, exhibits, and the record of prior proceedings show that the Birdse is not entitled to relief.  Therefore, Birdse's Motions to Vacate Judgment pursuant to 28 U.S.C. § 2255 are **DENIED**.

**IT IS SO ORDERED.**

          **s/ S. Thomas Anderson**
          S. THOMAS ANDERSON
          UNITED STATES DISTRICT JUDGE

          Date: August 10, 2016.

---

[46] *See* Fed. R. App. P. 24(a)(1).

[47] *See* Fed. R. App. P. 24(a) (4)-(5).

[48] If Birdse files a notice of appeal, she must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within 30 days.